## AMON JOHNSON v. STATE.

No. A-10550.   Jan. 10, 1945.

(155 P. 2d 259.)

Mathers & Mathers, of Oklahoma City, and M. A. Cox, of Chandler, for plaintiff in error.

Randell S. Cobb, Atty. Gen., for defendant in error.

JONES, J. The defendant. Amon Johnson, was charged in the district court of Lincoln county in case No. 2747, with the crime of murder of Martha Gorski, and was charged by information in the same court in case No. 2748, with the crime of murder of Mrs. Victoria Gorski. The defendant entered a plea of guilty in each of said cases and was sentenced to death in the electric chair at the State Penitentiary for said crimes by him so committed, from which judgment and sentence an appeal was taken to this court.

By agreement, the two cases were consolidated and appealed to this court as one case. The killings occurred at the same time, and the pleas of guilty to the two charges were entered at the same time; and this procedure was followed for the reason that, unless the defendant received relief from the sentences imposed in both cases, it would not avail him anything to secure relief in only one case.

It has been held that an accused has a constitutional right to appeal to the Criminal Court of Appeals from any judgment rendered against him in a court of record, including a judgment rendered on a plea of guilty. Hardy v. State, 35 Okla. Cr. 75, 248 P. 846; Tuggle v. State, 73 Okla. Cr. 208, 119 P. 2d 857.

The petition in error alleges that the defendant was denied a fair and impartial trial, and that the sentence pronounced against him upon his plea of guilty was not in accordance with due process of law in that he was denied the right of counsel and was forced to enter a plea of guilty by threats.

A transcript of the proceedings before the trial court and at the arraignment of the defendant, including all proceedings connected with the preliminary examination before the committing magistrate, has been filed as a part of the record of this case.

About 4:30 p. m., on April 3, 1944, the lifeless bodies of Mrs. Gorski and her three-year-old daughter, Martha Gorski, were found in the hallway of a barn on the Gorski farm near the town of McLoud. The bodies were found by ten-year-old Helen Gorski when she returned to her home from school. Each of the bodies showed that they had been struck a severe blow on the head with a blunt instrument and that their throats had been cut to such an extent that the head almost severed.

At the time this crime was committed, someone had cut the throat of Roy Schat, a farmer in the northern part of Cleveland county, and had left him in an abandoned house and had stolen his truck.

After the bodies of the two Gorskis and the Cleveland county farmer had been found, the officers in their

investigation learned certain facts which pointed the finger of suspicion at the defendant. An intensive manhunt for the defendant was commenced which resulted in his capture in the river bottom near the city of Shawnee, on April 9, 1944.

After his arrest and incarceration in the county jail at Chandler, the defendant gave a written confession detailing his whereabouts during the few days preceding his capture by the officers and relating fully the circumstances surrounding the killing of Mrs. Gorski and her three-year-old child and the farmer in Cleveland county.

Criminal complaints were filed against the defendant in the justice of the peace court in the city of Chandler, charging him with the murder of the two Gorskis. In regard to the appearance of the defendant before the justice of the peace, the following proceedings are disclosed by the record filed herein:

"On the 12th day of April, 1944, the defendant, Amon Johnson, appears in person; state appears by Walter Hill, county attorney, and Walter Wilson, asst. county attorney, for the purpose of fixing the date for the preliminary hearing having been brought before the court heretofore on the 11th day of April, 1944, for arraignment on this charge, and after being advised of his constitutional and statutory rights requested a preliminary hearing in this case. And the following proceedings were had on this day:

"Court: You were before me yesterday and the complaint charging you with the crime of murder was read by the county attorney. The court advised you of your constitutional and statutory rights in this case and you requested a preliminary hearing. However, before fixing the date of the preliminary hearing I want again to advise you of the charge which has been filed against you and your constitutional and statutory rights in this case.

"You are advised that the complaint which was read to you before this court charges you with the crime of murder, which carried a penalty of life imprisonment or death in the electric chair upon conviction.

"You are further advised that I am only a committing magistrate and cannot accept your plea in this case whether it should be guilty or not guilty. However, I further advise you that you are entitled to a preliminary hearing if you want one and you requested a preliminary hearing in this case when you were here before me yesterday.

"You are further advised that the preliminary hearing is to determine whether or not the crime with which you are charged was committed and whether or not there is sufficient cause to believe that you committed it. This must be shown by competent evidence.

"If it is found from the evidence that this crime has been committed within this county and that there is sufficient cause to believe that you committed it, it will be my duty to hold you for trial in the district court of this county without bond.

"You are further advised that you may waive a preliminary hearing if you want to and if you should waive a preliminary hearing it is my duty to hold you for trial in the district court.

"You are further advised that the State of Oklahoma has a right to have a preliminary hearing in this case should the county attorney request it.

"Before fixing the date or before I permit you to waive a preliminary hearing, it is the opinion of this court that you should be advised by a lawyer. I am going to appoint one for you unless you would like to hire one for yourself. Is there any lawyer living in this county you would like for me to appoint for you? Mr. Hill: He is asking if you know a lawyer here that you would like appointed for you. The Defendant: I would like to have a lawyer to plead my case but I don't know anyone. Mr.

Hill: You are willing for the judge to appoint some lawyer of his own selection? The Defendant: I don't know anyone. The reason I had my pleads rearranged was so that if it wouldn't be necessary to have a preliminary hearing that I would be before the district judge to plead if I wanted to. So I had my rearrangement made then I wanted to know if I go before the district judge. Mr. Hill: Then you plan on waiving preliminary hearing? The Defendant: Yes, sir, and going before the district judge and have a jury trial. Mr. Wilson: It is the judge's opinion that he should have a lawyer here. Mr. Hill: The court thinks a lawyer should waive it for you and he is willing to appoint you a lawyer. It won't cost you anything. The Defendant: Well, I will waive preliminary hearing and the court will appoint me a lawyer. Court: You are entitled to have a counsel before you do anything, and if you haven't an attorney I will appoint one to guide you. The Defendant: Will you appoint me a lawyer to plead my case before the district judge? Court: No just for this. Mr. Wilson: The district judge said if you appoint an attorney here he would appoint the same attorney. Court: Call Dale Sutton. (Whereupon the court took a recess until counsel talked with the defendant.) (Court reconvened after reappearance of the defendant and his counsel.) Mr. Sutton: If the court please, we want to waive our preliminary hearing at this time. Mr. Hill: Is that for the two cases. The information is in both cases. Mr. Sutton: I presume there wouldn't be any difference in waiving both cases at this time. Court: Does the state request a preliminary hearing? Mr. Hill: State waives preliminary hearing at this time. Court: The defendant is ordered held for trial in the district court without bail."

Subsequently, and on the 13th day of April, 1944, informations were separately filed in the district court of Lincoln county, charging the defendant with murder. Thereafter, and on April 15, 1944, the defendant was brought before the district court of Lincoln county for arraignment of said charges of murder. At the time of said

arraignment, the official court reporter was present and a transcript of all the proceedings was made. They are quite lengthy and will not be set forth in detail in this opinion. It is sufficient to say that at the time of arraignment of the accused the district court fully advised him of the nature of the charge against him and of the nature of the procedure then being had and the consequences of his plea, and of his right to have counsel of his own choosing, that in case of his inability to employ counsel that the district court would appoint counsel to advise and assist the prisoner in every stage of the proceeding. The defendant then answered the court that he did not want an attorney, but wanted to enter a plea of guilty. The court then, on his own motion, appointed an attorney to advise with the prisoner. Later, the information was read in full to the accused by the assistant county attorney, after which a plea of guilty was entered. The court then fixed April 26, 1944, at 10 a. m., as the time for pronouncing judgment and sentence and directed both the state and defendant to be ready to present any evidence they might desire concerning the commission of the crimes by the defendant.

Thereafter, and on April 26, 1944, in pursuance to the order of the court, a summary hearing was held, at which hearing the defendant appeared in person and by his counsel. The state introduced several witnesses who testified concerning the commission of the crime and identifying the defendant as the perpetrator. These witnesses were cross-examined by counsel for defendant, but no proof was offered on behalf of the accused in mitigation of the offense or for any other purpose.

The following is a summary of the evidence presented at this hearing:

Helen Gorski, age 10, testified that when she came home from school about 4:30 p. m., she went to the barn to gather the eggs and saw her mother and her baby sister laying in the hallway as if they were asleep and each of their necks had been cut through the middle; that she hollered for help and her older sister came and, later, one of their neighbors went after her daddy who was at a farmer's meeting at Midway, a short distance away from their home.

Walter Gorski testified that he was the husband of Victoria Gorski and the father of Martha Gorski, deceased; that while he was attending a meeting at Midway, one of his neighbors advised him that his wife and baby had been killed; that he immediately returned home and saw their bodies still lying in the hallway of the barn. Each of their throats had been cut. Two cows and a two-year-old heifer that had been in his barn were missing and some cotton seed that did not belong to him had been left in his barn. He saw some tracks where a truck had backed up to his place and unloaded the cotton seed and where apparently the cattle had been loaded; that the next day, his cattle were recovered from the Livestock Commission Company in Oklahoma City.

Pearl Gorski. age 14, testified that she heard her little sister, Helen, hollering when she discovered her mother's body at the barn; that she notified the neighbors and, later, she went to Oklahoma City to the stockyards and identified their cattle.

Louis Drew testified that he was a mechanic at Harrah; that on the afternoon of April 3, 1944, the defendant drove up to his place of business in a 1934 Chevrolet truck. He had something wrong with his starting cable. The witness fixed the starting cable for the defendant. He

described in detail the clothes which were worn by the accused on that occasion and was positive in his identification of the defendant as the person who stopped at his place of business on that date. He also identified a picture of the Roy Schat Chevrolet truck as being the same truck which he serviced. It was a large truck with a livestock bed on it, with one wheel missing from the dual wheels on the rear. The place where this defendant stopped to have his cable fixed was not far from the Gorski home.

Lige McLaughlin testified that he saw the truck which he identified from the picture and which was being driven by the defendant about 12:30, on April 3, 1944, about two miles west of Midway and one and three-quarters miles north. Later, that afternoon, he saw the defendant and the same truck coming from the south and it was loaded with three cows and headed toward Oklahoma City. It was then about 4 p. m. The truck was coming from the direction of the Walter Gorski home and was being driven by the defendant.

Earnest Reust testified that he lived one-half mile from the Gorski place; that he passed the Gorski place on Monday afternoon, April 3, 1944, and saw a truck sitting by the barn and he saw a man talking to Mrs. Gorski by the truck. He described the appearance of the truck but he did not make a positive identification of the truck as was done by other witnesses.

Bob Lackey testified that he worked at the stock-yards; that on the afternoon of April 3, 1944, the defendant brought in three cattle for sale. He identified the truck and the license number of the truck in which the cattle were hauled and it was the same truck which was identified by the other witnesses. The cattle which he helped unload in the stockyard were the same ones which

were identified by Pearl Gorski the next day as belonging to her father.

Raymond Devis testified that he lived southwest of Moore; that late in the afternoon of April 3, 1944, he saw a truck pass his place; that one dual wheel was missing on the left side; that the person driving the truck left it about one-eighth mile south of his place.

L. C. Fishburn testified that he lived southwest of Moore; that he drove the school bus; that he saw a colored man going north about 5:15, walking. He described his appearance and the clothing he wore and the description tallied with the description made of the defendant by other witnesses. The witness later saw the truck at Moore, after it had been brought to that town.

C. W. Jefferson testified that he picked up the defendant south of Oklahoma City, in the evening of April 3, 1944, and let him out on Southeast 29th street and Walker avenue, in Oklahoma City; that he hauled the defendant approximately seven miles from a place west of Moore. He described his personal appearance and the description tallied with that related by other witnesses.

Viola Jones and Elmo Jones, negroes, testified that they had a home in Oklahoma City; that Amon Johnson and Eloise Chandler, a negro girl, had been living with them for about a month prior to April 3, 1944. and were living with them on that date; that Amon Johnson left home about 8 o'clock in the morning of April 3, 1944; that they next saw him about dark that same day; that they were awakened later in the night by the defendant and Eloise Chandler having a fight. They heard the defendant say he had already killed three people and that if he could blow breath back into them he would do it again.

That he was threatening to cut Eloise's throat. That Elmo told them to shut up and the defendant put up the knife and went with Elmo to the pool hall. That the next morning the defendant burned something in two bags.

E. E. Jones and Nathan Baker, two negro policemen, testified concerning their investigation of the murder of the Gorskis and of the man who had been slain in northern Cleveland county. They found where the farmer from Cleveland county had driven to a cotton seed oil mill in the negro section of Oklahoma City, and that they later learned that when the man left the oil mill a colored man rode on the truck with him. Their investigation showed that this colored man was Amon Johnson. That they checked on his record and found that he had a criminal record for stealing cattle. That it was their investigation which led to talking to Elmo Jones, who told them of the conversation which he and his wife overheard between the defendant and Eloise Chandler, and the further statement of Elmo Jones that when the defendant came home on the evening of April 3rd he had blood on his sleeve.

Robert Travis testified that he was the state finger printer with the Department of Public Safety. That he went to the Gorski home and made photographs of certain truck tracks which were plainly seen in the dirt near the Gorski barn. That later that day he accompanied the officers southwest of Moore, near the Canadian river, where an abandoned truck was found. That the truck which they found made tracks identical with those which he photographed at the Gorski farm. An investigation showed that the truck belonged to Roy Schat, who was the slain farmer from Cleveland county, who had driven the truck to the cotton seed oil mill in Oklahoma City. This was the witness who made the photographs of

the Schat truck which were exhibited to the various witnesses for identification.

The sheriff and a notary public of Chandler testified concerning the making of the confession by the accused. This confession was taken down in writing and signed and sworn to by the defendant before the notary public. The substance of the confession will hereinafter be detailed.

Dr. A. J. Williams testified that he was called to the Gorski home about 6 p. m. to examine the bodies of Victoria and Martha Gorski. That each of them had received a blow on the head of sufficient force to crush the skull and cause their death. That each of them had been cut across the neck deep enough to sever the cord and all arteries. That the neck was about one-half severed. That the blow or the cut on the throat either would have caused the death of either of the persons which he examined.

The confession signed and sworn to by the defendant was very lengthy and covers about eight pages in the record. In substance, the defendant states that he is 29 years old. That he had been living in Oklahoma City from February, 1944, until his arrest on April 9, 1944. That on April 3, 1944, about 10 a. m., he saw a man in a truck getting some cotton seed hulls at the cotton seed mill on East 4th street, in Oklahoma City. That he got in the truck with the man and asked the farmer who was driving the truck to take him to where some whisky had been stored and to haul it back to the city for him. That they drove to a vacant house and while there got into an argument and the defendant pulled his knife and cut the man. That after he had cut him, he drove the man's truck away. (This man was the farmer, Roy Schat, whose body was found in northern Cleveland county in an abandoned house, where his throat had been cut in the same manner

as had been done to the two Gorskis.) Defendant drove the truck east of Oklahoma City to Harrah and stopped at a filling station to have the battery cable fixed. That he drove on a few miles after leaving Harrah and turned into a farm house and started unloading the cotton seed hulls and the cotton seed meal in a barn on the place. That he drove the truck off the bank at the side of the road and started to load some cows that were on the place. That a woman with a little girl came out of the house and asked what he was doing, and defendant replied that her husband had sold him the cows for the cotton seed meal and hulls. That the woman commenced arguing that the cows belonged to her and that she did not want him to take them. That he then hit her on the head with a part of a neck yoke. After he had struck the mother, the little girl started crying, and he then hit her over the head with the same part of the neck yoke. That the woman started to fight him and he took his knife and cut her throat. After she had fallen, he reached down to where the child lay and also cut her throat. That after he had killed the mother and child, he finished loading the cows in the truck and then drove on to Oklahoma City and sold the cows to the American Commission Company. That he sold the cows under the name of Robert Jackson. That after selling the cows, he turned south of Oklahoma City and drove the truck to the bank of the Canadian River, where he abandoned it and caught a ride with a man and his wife in their car back to Oklahoma City. He also describes the places that he had been since the commission of the crime until his capture by the officers while he was hiding in the North Canadian river bottom near Shawnee. The confession of the defendant tallied in most respects with the physical facts shown by the testimony of the witnesses for the State.

At the conclusion of the summary hearing, the court sentenced the defendant to suffer death by electrocution on each of said charges.

We have detailed rather fully the record on the arraignment of the accused on each of the charges of murder, for the reason that this case is now before the court on an appeal from a plea of guilty entered by the defendant and the question has been presented to us whether all the formalities of the law have been fully complied with. At the time of the oral argument in this case, counsel for defendant stated to the court that he did not know of anything that the trial court should have done in connection with advising the defendant of the nature of the charge against him and of the consequences of his plea which was not done. No contention was presented at the hearing before this court that defendant was denied his right to counsel or that the confession was made through threats or duress.

The infliction of the death penalty should not be imposed except in extreme cases. It is not hard to conclude from the viciousness shown by the defendant in his attacks upon his victims that he had forfeited his right to live in a society of his fellow men. His brazen and cold-hearted assertion that "I have killed three people and if I could blow breath back into their bodies, I would kill them again," shows absolute depravity and a fiendish disregard for human life. His murderous acts were prompted by an evil-minded and hell-born desire to slash the throats of his victims.

The trial court was very careful in all of the proceedings to see that the accused fully knew what was being done. He appointed counsel to fully advise with accused and after the guilty plea was entered the court postponed

the pronouncement of the sentence for eleven days and directed a hearing concerning the details of the crimes charged to defendant. A careful consideration of the whole record discloses no error in the proceedings before the trial court and it is apparent that the judgment and sentence of death was fully justified and that said judgment in each of said cases should be affirmed.

The original time for execution having passed, owing to the pendency of this appeal, it is considered, ordered, and adjudged by the court that the judgment and sentence of the district court of Lincoln county be carried out by the electrocution of the defendant on the 23rd day of March, 1945, in the State Penitentiary, at McAlester, Oklahoma.

BAREFOOT, P. J., concurs. DOYLE, J., not participating.